**Paul H. KRALMAN, Plaintiff–Appellant,**

v.

**ILLINOIS DEPARTMENT OF VETERANS' AFFAIRS, Defendant–Appellee.**

**No. 93–3398.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1994.

Decided April 20, 1994.

Rehearing Denied June 3, 1994.

David W. Sutterfield, Fred W. Johnson (argued), Sutterfield & Johnson, P.C., Effingham, IL, for plaintiff-appellant.

John A. Kauerauf, Scott C. Helmholz (argued), Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, IL, for defendant-appellee.

Before WOOD, Jr., and KANNE, Circuit Judges, and FOREMAN, District Judge.*

FOREMAN, District Judge.

Paul Kralman is appealing from the district court's entry of summary judgment in favor of the Illinois Department of Veterans' Affairs on Kralman's age discrimination claim, 1993 WL 650860. We affirm.

## I. FACTS

Paul Kralman had been employed as a Veterans' Service Officer in the Department's office in Vandalia, Illinois, from May 1979 until the office was closed in August 1987 due to a lack of funding. He was given the option of drawing a pension or retaining his right of recall should the office reopen sometime in the future. Kralman chose to draw a pension.

In March 1989, the Department made plans to reopen the office. Although the Department had the right to reinstate Kralman to his prior position if it wished, the Department decided instead to open the application process to other candidates approved by Central Management Services. Kralman and three other applicants were interviewed for the position. The Department ultimately hired one of the other candidates, Lynn P. Brown.

Kralman, who was 71 at the time that he applied for reinstatement to the position, claims that he was denied the position because of his age. The Department denies that age was a factor in the decision. It asserts that Brown, who was 46 at the time, was chosen because of his superior educational background, his demeanor during the job interview, and the fact that he is a veteran with a service-connected disability.

Kralman brought suit against the Department under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The district court granted the Department's motion for summary judgment against Kralman on two grounds. The court first stated that Kralman could not establish a *prima facie* case of discrimination because the Department ultimately hired a person who also was in the age class protected under the ADEA. The court based this ruling on recent Seventh Circuit decisions which, in the court's opinion, appeared to create "a uniform requirement that persons not in the protected class must be treated more favorably in order for the plaintiff" to establish a *prima facie* case of discrimination. Dist.Ct.Order, at 5.

In the alternative, the court held that even assuming the plaintiff could establish a *prima facie* case, the plaintiff could not prove that the Department's reasons for hiring Brown were a pretext for discrimination. The plaintiff appeals from that decision.

## II. ANALYSIS

The appellate court reviews summary judgments under a de novo standard. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370 (7th Cir.1992).

> In order to uphold a grant of summary judgment, we must "view the record and all inferences draw from it in the light most favorable to the party opposing the motion" ... and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the non-moving party.

*Id.* (citations omitted). This standard "is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue." *Id.* at 370–71.

---

* The Honorable James L. Foreman, District Judge for the Southern District of Illinois, sitting by designation.

■ Under the ADEA, an employer may not discharge, refuse to hire, or otherwise discriminate against any individual who is age 40 or older. 29 U.S.C. §§ 623(a), 631(a). "The plaintiff need not prove that age was the sole factor motivating the employer's decision, only that age was a determining factor in the sense that [the employment decision would not have been made] but for the employer's motive to discriminate on the basis of age." *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988).

■ A plaintiff may prove age discrimination by either of two methods: (1) by presenting direct or circumstantial evidence that age was the determining factor in the employment decision; or (2) by utilizing the indirect, burden-shifting method of proof that was recognized in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for Title VII cases. Under this latter method, the plaintiff must establish a *prima facie* case of discrimination by proving, *inter alia,*[1] that he or she was in the protected class and was otherwise qualified for the position. Satisfaction of these requirements for a *prima facie* case establishes a rebuttable presumption of discrimination and shifts the burden of production to the defendant to articulate lawful reasons for the employment decision. Once the defendant articulates a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination dissolves and the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are pretextual. *Oxman,* 846 F.2d at 452–53.

The appellant argues that the district court erred in holding that a plaintiff cannot establish a *prima facie* case under the ADEA if the defendant employer hires another individual who is also within the protected age class. He further argues that he presented sufficient evidence to create a genuine issue of material fact as to whether the Department's proffered reasons for not hiring the plaintiff were merely a pretext for age discrimination.

### A. Establishing a Prima Facie Case

The precedents in this circuit set forth several somewhat confusing variations of the elements required to establish a *prima facie* case of age discrimination. Some adaptation is inevitable given the various types of employment action—i.e., hiring, demotions, discharges—that may be at issue in the case. However, we have found variations even within a particular class of action.[2]

In hiring cases, such as the case at bar, this circuit has issued at least two different versions of the *prima facie* requirements. In 1984, we stated that "a plaintiff must demonstrate (i) that he belongs to a protected group; (ii) that he applied and was qualified for a job for which the employer was seeking applications; (iii) that he was not hired; and (iv) that the employer continued to seek applicants." *Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 411 (7th Cir. 1984). In a case decided the following year, the wording of the first three elements in *Vaught* was changed only slightly, but the court substituted the following for the fourth element: "that the employer hired instead a younger person." *Caldwell v. National*

---

1. The exact requirements of a *prima facie* case are in dispute in this appeal.

2. For example, there are no fewer than four different statements of the *prima facie* requirements in cases involving discharges. *See, e.g., Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994) (to establish a *prima facie* case under ADEA, plaintiff must prove he is (1) in the protected class; (2) performing the job satisfactorily; (3) nevertheless the subject of a materially adverse employment action; and (4) others outside of the protected class were treated more favorably); *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993) (plaintiff must prove (1) he was a member of the protected class; (2) he was performing his job well enough to meet employer's legitimate expectations; (3) he was discharged; and (4) the employer sought a replacement for him); *Monaco v. Fuddruckers, Inc.,* 1 F.3d 658, 660 (7th Cir.1993) (plaintiff must prove (1) he was more than 40 years old, he performed his job satisfactorily; (3) he was discharged (either actually or constructively; and (4) the discharge occurred under circumstances which gave rise to an inference of age discrimination); *Grohs v. Gold Bond Bldg. Prods.,* 859 F.2d 1283, 1286 (7th Cir.1988) (plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his position; (3) was terminated; and (4) was replaced by a younger person.), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989).

*Ass'n of Home Builders,* 771 F.2d 1051, 1056 n. 2 (7th Cir.1985).

The district court acknowledged the *Caldwell* standard in its decision in the case at bar, but went on to adopt a third form of the test, stating:

> Most of the recent age discrimination cases reported by the Seventh Circuit involve terminations or demotions of employment rather than instances of failure to hire a job applicant. However, in examining the trend among age discrimination cases asserting some form of disparate treatment, it appears that the Seventh Circuit has created a uniform requirement that persons not in the protected class must be treated more favorably in order for a plaintiff to satisfy the fourth prong of the *prima facie* case. *Oxman v. WLS–TV,* 846 F.2d 448, 455 (7th Cir.1988); *Konowitz [v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992) ]; *Crady v. Liberty National Bank & Trust Co. of Indiana,* 993 F.2d 132, 134–35 (7th Cir.1993). Therefore, this Court will follow the trend of the Seventh Circuit cases requiring that persons who are not members of the protected class must be treated more favorably in order for a plaintiff complaining of a materially adverse employment action to establish a *prima facie* case of age discrimination.

Dist.Ct. Opinion, at 5.

The district court's reliance upon *Oxman, Konowitz,* and *Crady* is understandable, but

not persuasive. It is important to keep in mind that none of those prior cases dealt with a situation where both the plaintiff and the person who received more favorable treatment were both in the protected class. Therefore, to the extent that these cases suggest that a plaintiff cannot prevail under those circumstances, that suggestion would be merely dictum. More significantly, a careful reading of *Oxman* shows that the court was merely suggesting *one way* in which a plaintiff could meet the *prima facie* case; it did not state that its variation of the fourth element is a *sine qua non* for recovery.[3]

A similar situation exists in *Konowitz* and *Crady.* In stating that a plaintiff must show that the employer "treated others outside the protected class more favorably than [the plaintiff] was treated," *Crady* cites to the *Konowitz* decision. *Konowitz,* however, states that a plaintiff "may" establish a *prima facie* case by demonstrating those facts. Thus, the opinion also suggests that its formulation of the standard is one way that a plaintiff may establish a *prima facie* case; it does not foreclose other variations.[4]

The Department suggests that the district court correctly read *Oxman, Crady,* and *Konowitz* as holding that a plaintiff cannot establish a *prima facie* case under the ADEA case if the employer ultimately hires another

---

**3.** *Oxman* presented a slightly more complex case because it involved an employee who was terminated under a reduction in force. Therefore, the court was required to adapt the usual *McDonnell Douglas* test for discharged employees. *Oxman* adopted the first three elements of a *prima facie* case—i.e., that the employee was in the protected class, that he was doing his job well, and that he was terminated. However, the court stated that the fourth element—that the employer sought a replacement—was not applicable to a reduction-in-force situation. Because the first three elements alone were not enough to establish a *McDonnell Douglas* inference, *Oxman* stated that "[t]here has to be something more—an additional showing that creates an inference of discrimination such as that created by an employer who fires an older employee who was performing adequately and *then* seeks a replacement." *Id.* at 454.

The court ultimately found that if a terminated employee can show that more favorable treat-

ment was given to others who are not in the protected class, "[s]uch a showing is enough to create a reasonable inference [of discrimination]" under *McDonnell Douglas.* Elsewhere in the opinion, *Oxman* refers to more favorable treatment of "a younger person." Thus, *Oxman* does not require that more favorable treatment be given to someone outside the protected class. It suggests that those facts would give rise to the inference but does not stand for the proposition that those are the *only* facts that will suffice to establish a *prima facie* case.

**4.** In addition, *Konowitz's* version of the *prima facie* case cites back to *Young v. Will County Dep't of Public Aid,* 882 F.2d 290, 293 (7th Cir. 1989). *Young* itself cites to *Matthews v. Allis–Chalmers,* 769 F.2d 1215, 1217 (7th Cir.1985). However, *Matthews* relied upon an entirely different variation of the fourth element, which, coincidentally, was rejected by *Oxman.* Thus, *Matthews* cannot serve as precedent for the *Konowitz–Young* variation on the *prima facie* test.

individual who is also in the protected class. However, this view is contrary to the decisions of an overwhelming majority of other circuits that have expressly recognized that age discrimination may occur under such circumstances.[5] Indeed, it is considered "hornbook law" that the ADEA action can be based on discrimination between older and younger members of the protected class. *See Miller v. Lyng*, 660 F.Supp. 1375, 1377 n. 2 (D.D.C.1987) (compiling cases); 3A Larson, *Employment Discrimination* § 98.53, at 21–59 (1990); *cf. Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1372 (2d Cir. 1989) (although court held that plaintiff could not prevail on a *disparate impact* claim where employees who were treated more favorably were also in the protected age group, the court expressly stated that "there is nothing to prevent" the plaintiff from prevailing on a *disparate treatment* claim on the same facts).[6]

■ Furthermore, a regulation promulgated by the Equal Employment Opportunity Commission (EEOC) expressly states that:

(a) It is unlawful in situations where this Act applies, for an employer to discriminate in hiring or in any other way by giving preference because of age between individuals 40 and over. Thus, if two people apply for the same position, and one is 42 and the other 52, the employer may not lawfully turn down either one on the basis

of age, but must make such decision on the basis of some other factor.

29 C.F.R. § 1625.2(a). Because the EEOC is the primary agency charged with implementing the ADEA, its interpretation is entitled to great deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

Prior to the instant case, this circuit has not squarely addressed the issue. However, three cases have noted the EEOC regulation and acknowledged that "an employer is not insulated from liability for age discrimination when he chooses among people in the protected class." *Mayall v. Peabody Coal Co.*, 7 F.3d 570, 572 (7th Cir.1993); *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1411 n. 4 (7th Cir.1984); *see also Hamilton v. Caterpillar, Inc.*, 966 F.2d 1226, 1228 (7th Cir.1992) (stating that the court has "no quarrel" with cases that have interpreted the EEOC regulation as providing that "an older plaintiff may maintain a cause of action under the ADEA even if his replacement is over 40.").

■ Based upon these authorities, we find that the district court erred in holding, as a bright-line test, that the plaintiff could not prove a *prima facie* case because the person who was ultimately hired for the job was 46 and, therefore, also a member of the protected class. We recognize that there may be

---

**5.** *See, e.g., Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir.1990) ("An employer violates ADEA when preference is given to a younger employee even if the younger employee is within the protected class of persons age 40-and-over."); *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir.1989) ("we have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a *prima facie* case."); *Bienkowski v. American Airlines*, 851 F.2d 1503, 1506 (5th Cir.1988) ("A prima facie case of age discrimination can be constructed where the plaintiff was replaced by a younger worker even if the younger worker is himself within the protected class."); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 792 (3d Cir.1985) ("Courts that have addressed this issue squarely have universally permitted a prima facie case to be shown through proof that the favored person was younger than plaintiff. All have held that the replacement need not be younger than 40, the age at which ADEA protection begins."); *Lovelace v.*

*Sherwin–Williams Co.*, 681 F.2d 230, 242 n. 13 (4th Cir.1982) ("an ADEA claim involving replacement by another does not require as a matter of law proof that the other was outside the protected age group.").

**6.** We have found one recent Sixth Circuit decision that held that the plaintiff must show that he was replaced by someone outside the protected class. *LaPointe v. United Auto Workers*, 8 F.3d 376, 379 (6th Cir.1993). However, this decision contains no analysis on the issue; it merely cites to two prior Sixth Circuit decisions that recite this requirement as part of the *prima facie* case. Like *Oxman*, the two prior cases did not squarely address the issue. Significantly, the *LaPointe* decision does not acknowledge the circuit's decision in *Barnes*, which did expressly address the issue and held that an ADEA violation occurs even if the employee who receives more favorable treatment is also within the protected age group. *See* note 5, *supra*.

some circumstances in which a court may find that the difference in ages between the plaintiff and the favored employee are not sufficient to create a reasonable inference of age discrimination.[7] However, in this case, the plaintiff, at age 71, was of an entirely different generation than the employee who was ultimately hired for the position. We, therefore, find that the plaintiff's evidence would satisfy the *prima facie* requirements under the ADEA.

### B. Sufficiency of Evidence to Show Pretext

The district court stated that even assuming the plaintiff could establish a *prima facie* case of discrimination, the Department had met its burden of demonstrating a legitimate, nondiscriminatory reason for its decision not to hire Kralman. Although Kralman had prior experience in this particular position, the Department "indicated that prior experience was not the primary factor in its decision to hire a veterans service office, but that the formal education and temperament of the applicants were the factors considered in hiring." Dist.Ct.Order, at 6.

The court noted that the Department ultimately decided that Brown had a better education and greater enthusiasm for the job than Kralman. In addition, the Department had indicated that it preferred to have a disabled veteran fill the position. Based upon this showing, the district court found that the burden shifted to the plaintiff to show that these reasons were pretextual.

A plaintiff can prove that an employer's proffered reasons for an employment decision are pretextual by one of two meth-

ods: (1) by showing that a discriminatory reason more likely than not motivated the employer (i.e., that the company's proffered reasons were not the sole determining factors and, therefore, age discrimination might have been a determining factor in addition to the proffered reasons); or (2) that the employer's proffered explanation is unworthy of credence. *Konowitz*, 965 F.2d at 232. "If the company gives a reason for its decision that is unrelated to age, the plaintiff must present evidence either that the real reason was age or that the stated reason is unworthy of belief—a mere pretext, possibly of discrimination." *Id.* at 232–33.

It is important to keep in mind, however, that there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment.

[W]e do "not sit as a super-personnel department that reexamines an entity's business decisions." ... "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." ... Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior."

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted). "Thus, the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers."

---

**7.** Although the Fifth Circuit recognized that a plaintiff can construct a *prima facie* case even if the favored employee is within the protected class, the court went on to state that "[s]uch a showing is not, however, necessarily sufficient to prove a prima facie case." *Bienkowski*, 851 F.2d at 1506. Thus, the Fifth Circuit suggests that a plaintiff should show "that he was replaced by a worker sufficiently younger in the context of his employment...." *Id.* Similarly, the Third Circuit has stated that "[t]he probative value of the replacement as evidence of discrimination will depend on the circumstances of the case. Although replacement by someone younger, without more, will not give rise to an inference of age

discrimination, it has been noted that a substantial difference in the ages may be circumstantial evidence that gives rise to that inference." *Maxfield*, 766 F.2d at 792; *see also Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir.1979) ("the probative value of the evidence as to the age of complainant's replacement obviously will depend on complainant's own age and the age difference. Replacement of a 60 year old by a 35 year old or even a 45 year old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old within the protected class or by a 39 year old outside it.").

*McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992); *see also Bienkowski v. American Airlines,* 851 F.2d 1503, 1508 (5th Cir.1988) ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.").

The appellant argues that there is considerable evidence in the record to challenge the defendant's proffered reasons for hiring Brown over Kralman. The main thrust of this evidence is (1) that the Department supervisors who made the hiring decision are unable to articulate specific facts to support their claims that plaintiff lacked enthusiasm and a professional attitude; (2) Howard Wilson, the supervisor who interviewed the candidates and made the recommendation to hire Brown instead of the plaintiff, was unable to explain how Brown's educational background made him better qualified for the job; and (3) although Wilson claims that both candidates were "equally qualified," plaintiff's expert Mike Ippolito contends that Kralman was clearly the superior candidate—apparently because of his prior experience.

8. Plaintiff's expert Ippolito says that the veteran's preference only pertains to the initial examining process by Central Management Services and not in the hiring process by the Department. Joe Steele, a Department supervisor, disagrees with Ippolito's view. However, Department Director John Johnston, who ultimately accepted Wilson's recommendation and approved the hiring of Brown, concedes that it would have been incorrect for the Department to choose Brown over Kralman solely because of Brown's disabled veteran status.

9. We might reach a different result if the evidence showed that Johnston had made the decision to hire Brown and had based this decision on Brown's disabled veteran status. That decision obviously would be suspect in light of Johnston's statement that it would be improper to grant that type of preference. However, Johnston was not the actual decisionmaker here. To the contrary, the record shows that the hiring decision was made by Wilson and that Johnston merely approved—or in the words of appellant's counsel, "rubber-stamped"—Wilson's recommendation. The appellant has pointed to no evidence in the record that would show that Johnston was aware that Wilson had based his recommendation on Brown's status.

Arguably, there may be an issue of fact as to whether the Department truly had a rational basis for its claim that Brown was hired because of his superior education and enthusiasm. However, we need not make that determination because the plaintiff's evidence clearly is insufficient to refute the Department's claim that Brown was preferred over Kralman because Brown is a disabled veteran.

 Wilson testified in his deposition that he relied on Brown's status as a disabled veteran and claimed that this was a proper criterion. Although there is some dispute among other witnesses as to whether this was in fact a proper criterion,[8] there is nothing in the record to dispute the fact that Wilson himself believed that it was a proper consideration. Therefore, even assuming that Wilson was incorrect in thinking that he had to give a preference to Brown because of his status as a disabled veteran, Wilson's decision would fall into the area of an honest mistake or a bad business judgment on Wilson's part; it does not prove that the Department's proffered reason is a pretext.[9] Accordingly, we agree with the district court that the appellant failed to carry his burden of proof on the third step of the *McDonnell Douglas* inquiry.[10]

10. We note that in his brief and at oral argument, appellant's counsel makes several references to the fact that the Department had refused to reinstate Kralman to his position and had required him to reapply for the job through the competitive hiring process. Counsel argues that this decision is suspect because the Department could not articulate a specific reason for refusing to recommend that Kralman be reinstated. However, as the appellee points out, the plaintiff's complaint was not based upon a failure to reinstate him to the position; rather, his claim was based upon the decision to hire someone else—a younger person—for the position. Even if we were to assume that Johnston had improperly considered Kralman's age in refusing to recommend that he be reinstated, that fact would have no bearing upon our analysis of *Wilson's* ultimate decision to hire someone else. We have found that Wilson gave a legitimate, nondiscriminatory reason for his choice and that the plaintiff was unable to prove that Wilson's rationale was pretextual. Therefore, plaintiff cannot prevail on his claim that the Department refused to hire him because of his age.

### III. SUMMARY

The district court erred in finding, as a bright-line test, that a plaintiff cannot establish a *prima facie* case of discrimination unless the plaintiff can show that a person outside the protected age group was given more favorable treatment. However, the district court correctly found that the plaintiff could not prove that the Department's reasons for hiring Brown were a pretext for discrimination. Accordingly, the district court's decision is hereby AFFIRMED.