Alice Faye HOUCHENS,
Plaintiff–Appellant,

v.

**AMERICAN HOME ASSURANCE COMPANY, Defendant–Appellee.**

No. 90–1758.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1990.

Decided March 1, 1991.

William Lee Bransford, argued (Steven L. Murray, on brief), Neill, Mullenholz & Shaw, Washington, D.C., for plaintiff-appellant.

Paul Raymond Pearson, argued (Beverley A. Ramsey, on brief), Arthur and Speed, Ltd., Arlington, Va., for defendant-appellee.

Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

ERVIN, Chief Judge:

Alice Houchens brought suit against American Home Assurance Company ("American") for breach of contract involving two insurance policies in the United States District Court for the Eastern District of Virginia. American made a motion for summary judgment, and a hearing was held on the motion. The district court granted American's motion for summary judgment,[1] and Houchens appealed. Finding no error in the granting of summary judgment in favor of American, we affirm.

## I.

Coulter Houchens disappeared in August 1980 and has not been heard from since. His wife, Alice Houchens, is trying to collect upon either of two life insurance policies issued by American, which covered Mr. Houchens. One policy was an occupational accidental injury and death insurance policy. The other policy was a non-occupational accident insurance policy; it excluded coverage if the injury was caused during employment. Both policies required that

the insured's death be caused by accident in order to be covered.

Evidence shows that Mr. Houchens was a former employee of the Federal Aviation Administration (FAA). On November 19, 1978, Mr. Houchens was released from the FAA and was transferred to the International Civil Aviation Organization in Montreal, Canada (ICAO). As an employee of ICAO, Mr. Houchens was stationed in Dharan, Saudi Arabia.

Sometime around August 14, 1980, Mr. Houchens received a week of vacation leave. He traveled to Bangkok, Thailand on or before August 14 via Thai Airlines. Immigration records show that he arrived in Bangkok on August 15, 1980. His entry permit was valid through August 29, 1980.

No one has heard from Mr. Houchens since that time. The State Department, the FBI, ICAO, Mrs. Houchens, and the Red Cross have searched for him to no avail. In 1988, Mrs. Houchens brought an action to declare Mr. Houchens legally dead under Virginia law. On April 29, 1988, an order was issued by the Circuit Court of Loudoun County, Virginia, declaring that Mr. Houchens is presumed to have died between August 15 and August 29, 1980.

Houchens sued American for breach of contract because American refused to pay under either of two accidental death policies covering Mr. Houchens, which were issued by American. Both policies provided coverage in the event of death by accident. American maintained that there was no evidence of Mr. Houchens' death, nor was there evidence of *accidental* death. American moved for summary judgment, and the district court granted the motion. This appeal followed.

## II.

We now review the district court's grant of American's motion for summary judg-

1. The court stated its reasoning as follows: "Under the Celotex Case, of course, when met with a motion for summary judgment such as this it is incumbent upon the plaintiff to come forward with evidence that would allow a fact finder to infer that the death resulted from an injury which was caused by accident. I don't think that the plaintiff has met that burden. The disappearance, and that is really all we have here, of the decedent is not, in my opinion, disappearance and not being found, is all that the plaintiff really can show here. I don't think they are such from which a jury or other fact finder could infer a death caused or accidental injury caused by an accident which resulted in death."

ment. Rule 56 provides that summary judgment is proper if there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Helm v. Western Maryland Ry.*, 838 F.2d 729, 734 (4th Cir.1988). Summary judgments are reviewed *de novo* on appeal. *Elliott v. Norfolk & Western Ry. Co.*, 910 F.2d 1224, 1230 (4th Cir.1990). "The appellate court, therefore, must reverse the grant of summary judgment if it appears from the record that there is an unresolved issue of material fact; the inferences to be drawn from the underlying facts contained in the materials before the trial court must be viewed in the light most favorable to the party opposing the motion." *Id.* Thus, we must determine if there is a genuine issue of material fact after drawing any inferences in the light most favorable to Houchens.

### III.

Section 64.1–105 of the Virginia Code[2] provides that a person who has been missing for 7 years is presumed to be dead. Va.Code Ann. § 64.1–105 (1987). Therefore, Mr. Houchens is presumed to be dead, and Mrs. Houchens is entitled to that presumption. However, in order for Mrs. Houchens to recover under the American policies, she must prove that Mr. Houchens died as a result of an accident. The term accident is not defined in the policies. In such cases, the courts of Virginia have said that an accident is an "event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." *Harris v. Bankers Life & Cas. Co.*, 222 Va. 45, 46, 278 S.E.2d 809, 810 (1981) (quoting *Ocean Accident & Guaranty Corp. v. Glover*, 165 Va. 283, 285, 182 S.E. 221, 222 (1935)).

"Under the general rule ... a beneficiary who makes a death claim under an accident policy or the double indemnity

clause of a life policy, has the burden of proving that the insured's death was caused by violent, external and accidental means within the terms of the policy." *Life & Cas. Ins. Co. of Tennessee v. Daniel*, 209 Va. 332, 335, 163 S.E.2d 577, 580 (1968). Therefore, the burden is on Mrs. Houchens to prove that her husband died by accidental means.

The district court granted summary judgment to American in this case under the rationale of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court set out the standard for granting summary judgment as follows:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. We elaborated on that standard in *Helm v. Western Maryland Ry. Co.*:

> The appellate court, therefore, must reverse the grant of summary judgment if it appears from the record that there is an unresolved issue of material fact; the inferences to be drawn from the underlying facts contained in the materials before the trial court must be viewed in the light most favorable to the party opposing the motion.

---

**2.** Section 64.1–105 provides in pertinent part: If any person who has resided in this Commonwealth either (i) leaves and does not return to the Commonwealth for seven years successively and is not heard from or (ii) disappears for seven years successively and is not heard from, or if any person not residing in this Commonwealth, but owning real or personal property herein, disappears for seven years successively from the place of his residence outside of this Commonwealth and is not heard from, any such person shall be presumed to be dead in any cause wherein his death is in question, unless proof is offered that he was alive within that time.

838 F.2d 729, 734 (4th Cir.1988). On this appeal, then, we must view the evidence in the light most favorable to Houchens to ascertain whether she made a sufficient showing that Mr. Houchens died accidentally.

Mrs. Houchens asserts that the presumption that Mr. Houchens is dead somehow translates into the presumption that he died accidentally; therefore, she made a sufficient showing. She relies upon three cases from the western part of the country as support for the fact that she met her burden. The first case is *Martin v. Insurance Co. of America,* 1 Wash.App. 218, 460 P.2d 682 (1969). There, the "deceased" had been seen hunting elk in the American River Ridge. He was last seen alive at 9 a.m. at 3,000 foot level, without the aid of a compass, asking for directions. Conditions were inclement: snow on the ground, fog obscuring vision, and steep and wooded mountainside. The court explained the issue as follows:

> Defendant contends that because of the two-fold nature of the ultimate fact—both of which are dependent upon circumstantial evidence—the jury was first asked to infer death from the proven facts and thereafter to infer the manner of death—and that this process constitutes "the piling of inferences upon inferences." If this process constituted plaintiff's logical development of the ultimate fact, we would be obliged to affirm the judgment.... A jury will not be permitted to extrapolate conjecturally beyond a legal conclusion which is itself arrived at circumstantially by inference from a proven fact. But a given set of facts may radially project two (or more) separate inferences. In such event, one inferential conclusion is not pyramided upon another; each is drawn independently from the same evidence.

*Martin,* 460 P.2d at 684–85. The *Martin* court was persuaded that the surrounding circumstances of the missing person's disappearance gave rise to two separate inferences: (1) that he was dead; and (2) that the death was caused by accident. The plaintiff there was not piling inferences on

inferences. Rather, the evidence gave rise to two separate inferences.

The other two cases Houchens relies upon have equally bizarre and telling circumstances surrounding the disappearances. In *Englehart v. General Electric Co.,* 11 Wash.App. 922, 527 P.2d 685 (1974), the missing person told some people that he was going fishing. His car was discovered at the yacht club. His boat was found adrift with the ignition on, throttle at one-quarter speed in a forward running position. His children testified that he was not a good swimmer, and that the boat had recently had some problems requiring their father to lean over the back of the boat or to get into the water behind the boat in order to repair the problems. The court held that an inference of accidental death could be drawn from the circumstances surrounding his disappearance:

> We are not unmindful of [the rule] that "if there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred." This rule should be reserved for those cases where the inferences show equal support for opposing conclusions.

*Englehart,* 527 P.2d at 689.

In *Valley Nat'l Bank of Arizona v. J.C. Penney Ins. Co.,* 129 Ariz. 108, 628 P.2d 991 (Ct.App.1981), the missing person disappeared while camping in California with his wife and step-daughter. They all three disappeared. The deceased's skeletal remains were discovered at a campsite, with bullet casings nearby. The court relied upon the bizarre circumstances of his death to infer that the death was accidental.

These three cases are readily distinguishable from the case at bar. Here, there is only evidence of a disappearance. Mr. Houchens went to Bangkok and was never heard from again. There are no bizarre circumstances surrounding his disappearance. He was not last seen in a position of peril as in *Martin.* He simply vanished.

The circumstances surrounding his disappearance do not give us a clue that he actually died, as did the circumstances in *Martin, Englehart,* and *Valley National.* Viewed in the light most favorable to Mrs. Houchens, we can only conclude that Mr. Houchens disappeared, and then presume that he died under Virginia law. We cannot conclude that he died accidentally. To do so would be to pile inferences on inferences.

This is a case where the inferences show equal support for opposing conclusions. Mr. Houchens might have died accidentally. However, it is equally likely that he was murdered, that he died of natural causes, that he took his own life, or that he just went away somewhere and lives yet. "[I]t is our function ... to ascertain whether the evidence, considered in the light most favorable toward plaintiff affords room for men of reasonable minds to conclude that there is a greater probability that the ultimate fact did happen than that it did not happen." *Martin,* 460 P.2d at 686. The ultimate fact at issue here is whether the death occurred by accident. We cannot conclude that there is a greater probability that the death was caused by accident than by other means.

The Virginia Supreme Court gave guidance in this area in *General Accident & Casualty Corp. v. Murray,* 120 Va. 115, 90 S.E. 620 (1916). There the court wrote:

> [T]he right to recover upon the policy sued on must be established by a preponderance of the evidence deduced in the case, and not be based merely upon conjecture, guess or random judgment, that is, upon mere supposition without a single known fact.
>
> The [burden is upon plaintiff] to bring herself within the provisions of the contract of insurance by proving an accidental injury to the assured, and there is no presumption to aid her in this proof, since the well-established rule of law, according to all the authorities, is, that when death occurs it is presumed to be the result of natural dissolution rather than of accidental injury.

*Murray,* 120 Va. at 126, 90 S.E. 620. In *Murray,* the court denied recovery even though the plaintiff had presented some circumstantial evidence of how the decedent had died.

Houchens relies upon some suicide cases in order to bolster her argument. She argues that American had the burden of proving that Mr. Houchens did not commit suicide. From that she argues that since American did not meet this burden, there is a presumption that Mr. Houchens did *not* commit suicide. This argument and the cases cited are inapposite.

In the suicide cases, the only question before the court was whether the cause of death was suicide or accident. *See, e.g., Life & Cas. Ins. Co. of Tennessee v. Daniel,* 209 Va. 332, 163 S.E.2d 577 (1968); *Moore v. Union Fidelity Life Ins. Co.,* 297 N.C. 375, 255 S.E.2d 160 (1978). As the Supreme Court of Appeals of Virginia has noted:

> It is the settled doctrine in Virginia, supported by a long line of decisions, that where circumstantial evidence is relied upon to establish suicide as a defense to an action on a life insurance policy, the law presumes that death results from a natural cause and the burden is upon the insurer to establish suicide by clear and satisfactory evidence to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes.

*Daniel,* 209 Va. at 335, 163 S.E.2d at 580. In both *Daniel* and *Moore,* there was no question that the person had died, and circumstantial evidence showed that the person died of unexplained, external means. The only question for the court in those cases was whether the death was an accident or a suicide. Under those facts, where the insurance company defends on the ground of suicide, the insurance company bears the burden of overcoming the presumption in favor of death by accidental means.

The facts in this case are different from the suicide cases. Here, there is no evidence whatsoever that Mr. Houchens died, although there is a statutory presumption

that he did. In addition, there is no circumstantial evidence showing that Mr. Houchens died of unexplained, external means. Therefore, the suicide cases offer no support for Houchens.

### IV.

To summarize, Houchens relies on the presumption given her by § 64–1.105 of the Virginia Code to establish that Mr. Houchens is dead. She then relies upon the facts surrounding his disappearance as a basis for a jury finding that his death was accidental. However, the meager circumstances would not allow a jury to reasonably conclude that it is more likely that Mr. Houchens died from an accident than in some other manner. Because of the sparse evidence concerning his disappearance, we cannot say that the district court erred in granting summary judgment in favor of American under the *Celotex* standard. Therefore, the order of the district court is affirmed.

AFFIRMED.